# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
CITIZEN ELECTRONICS COMPANY, LTD.,          )
                                                                )
              Plaintiff,                                     )
                                                                )
       v.                                                      )    **Civil Action No. 05-0112 (ESH)**
                                                                )
OSRAM GMBH and OSRAM OPTO             )
SEMICONDUCTORS GMBH,                          )
                                                                )
              Defendants.                                )
_____    )

## <u>MEMORANDUM OPINION</u>

Plaintiff Citizen Electronics Company, Ltd. ("Citizen") filed suit on January 18, 2005,

seeking a declaratory judgment that its white light emitting diodes ("LEDs") do not infringe upon

the patents owned and assigned to Osram GMBH and Osram Opto Semiconductors GMBH

(collectively "OSRAM"). Alternatively, plaintiff seeks a declaratory judgment that the patents

are invalid. In response, defendants have moved to dismiss the complaint. Upon review of the

pleadings and the record herein, the Court grants defendants' motion to dismiss because plaintiff

has failed to prove that there was an actual controversy at the time the suit was filed, and thus,

the Court lacks subject matter jurisdiction.

## BACKGROUND

This action concerns seven patents issued to defendants OSRAM, headquartered in

Germany. Each of the patents relates to devices that can produce LEDs, which are small

semiconductor components that emit a variety of colors of light, including white light. Plaintiff,

a Japanese company, has imported, offered to sell, and sold white LEDs in the United States prior to January 18, 2005.

Between January and October of 2003, Citizen and OSRAM exchanged letters about a potential licensing agreement. However, the companies never reached an agreement because Citizen maintained that it was not infringing OSRAM's patents and/or that the patents were invalid. (*See* Gasser Decl., Ex. 5.) OSRAM, on the other hand, repeatedly maintained that Citizen was infringing its patents. (*Id*. Ex. 4.) The last communication between the two companies was a letter sent on October 31, 2003. (*Id.* 5.)

While there was no further contact between the parties, OSRAM did file a complaint with the United States International Trade Commission ("ITC") pursuant to Section 337 of the Tariff Act of 1940 on May 6, 2004, relating to its patents. In the complaint, OSRAM alleged that the white LEDs manufactured and distributed by Dominant Semiconductors ("Dominant"), a small Malaysian manufacturer, and its two United States distributors, American Microsemiconductors Inc. and American Opto Plus Inc., infringed nine OSRAM patents.[1] (Sanders Decl., Ex. 5.)

On July 2, 2004, OSRAM moved to amend its ITC complaint to exclude American Opto Plus because the company had declared that it would no longer import into the United States or market LEDs manufactured by Dominant. And, on July 19, 2004, OSRAM issued a press release for publication to the industry. OSRAM praised American Opto Plus for "recogniz[ing] the importance of our patent portfolio." (Gasser Decl., Ex. 8.) In addition, OSRAM stressed "that

---

[1] Six of these nine patents are at issue in this case: '861, '259, '301, '930, '780, and '247. The following patents were included in OSRAM's ITC complaint, but not in the instant action: '902, '321, and '580. In addition, Citizen has added a seventh patent in this case (the '500 patent) that had not been issued at the time of OSRAM's ITC complaint.

the company would not tolerate any infringement of its patent rights and would take legal action against any unauthorized use." (*Id.*)

Thereafter, in November and December of 2004, there were two additional events relevant to OSRAM's patents, but neither involved Citizen. First, on November 2, 2004, the '500 patent was issued by the U.S. Patent and Trademark Office. The patent shares the same parent application as the '930 patent, but the '500 patent is broader. (*See* Pl.'s Opp'n at 9.) Then, according to plaintiff, during a hearing before the ITC on December 6, 2004 regarding its complaint against Dominant, OSRAM articulated an expansive interpretation of its patent rights by claiming that the existence of homogenous white light provides sufficient evidence of infringement. (*See id*.)

On January 18, 2005, Citizen brought this declaratory judgment action against OSRAM, requesting a declaration that its white LEDs do not infringe upon any of OSRAM's patents and/or such patents are invalid. Shortly thereafter, OSRAM filed suit against Citizen in Germany, seeking to protect its patent rights in Europe.[2]  (*See* Defs.' Mot. at 28.)

OSRAM now moves to dismiss Citizen's declaratory judgment action pursuant to Fed. R. Civ. P. 12(b)(1), claiming that the Court lacks subject matter jurisdiction because Citizen fails to prove that there was an "actual controversy" when it filed suit, as required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

_____

[2]As of the filing of this motion, Citizen has yet to be formally served with the complaint filed in Germany. (*See* Pl.'s Opp'n at 16 n.6.)

**LEGAL ANALYSIS**

## I.  Standard of Review

When opposing a Rule 12(b)(1) motion, plaintiff has the burden of persuasion to establish by a preponderance of the evidence the existence of subject matter jurisdiction.  *See Thompson v. Capitol Police Bd.*, 120 F. Supp.2d 78, 81 (D.D.C. 2000).  Although "the [C]ourt must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor," *id.*, where the motion to dismiss concerns a dispute over the facts alleged to establish subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant.  Instead, the [C]ourt must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."  *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

## II.  Standard for Declaratory Judgment

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a federal court may exercise jurisdiction over a declaratory judgment only when there is an actual controversy between the parties.  *See EMC Corp. v. Norand Group.*, 89 F.3d 807, 810 (Fed. Cir. 1996).  As recently explained by the Federal Circuit, a plaintiff "must be able to demonstrate that it has a reasonable apprehension of *imminent* suit," and whether this standard is met "depends upon 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1331-33

(Fed. Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis in original).

In declaratory judgment actions involving patents, the Federal Circuit applies a two-prong test to determine whether an actual controversy exists. "There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity." *Teva*, 395 F.3d at 1332.

The two-prong test is objective, and the Court must apply it to the facts existing when the complaint is filed. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). Moreover, it is the plaintiff that bears the burden of proving by a preponderance of the evidence that it has a "reasonable apprehension" of facing a patent infringement suit. *Jervis B. Webb Co. v. Southern Sys. Inc.,* 742 F.2d 1388, 1398-99 (Fed. Cir. 1984). However, even when both prongs of the test are satisfied, and the Court finds that an actual controversy exists, the Court has substantial discretion to decline to issue a declaratory judgment. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"); *Teva*, 395 F.3d at 1331.

As of the date when suit was filed, Citizen was importing into the United States and offering for sale the white LEDs that OSRAM alleged infringed on its patents. (Pl.'s Opp'n at 19-20), so there is no dispute that plaintiff has satisfied the second prong of the actual

controversy test.  The determinative issue is, however, whether plaintiff has carried its burden of

showing that at the time that suit was filed on January 18, 2005, it had a reasonable apprehension

of imminent suit.  In resolving this question, the Court is mindful that absent an express charge

of infringement, a declaratory judgment must establish an actual controversy based on the

"totality of circumstances" surrounding the claim, *Arrowhead*, 846 F.2d at 736, and, therefore,

while both of the parties have cited a host of cases to support their positions, the resolution of

this case ultimately depends on whether the facts alleged, under all the circumstances,

demonstrate the existence of an actual controversy.  Teva, 395 F.3d at 1331.[3/]  To answer this

question, the Court will now turn to the facts relied upon by plaintiff to support its claim of

jurisdiction.


III.    **Defendant's Conduct**

        Plaintiff focuses on a series of events in 2003 and 2004.  While the parties dispute how

the events of 2003 should be characterized, the Court need not resolve this dispute and will limit

its analysis to the evidence in the record relating to 2003 (*i.e.*, the letters exchanged between the

_____

[3/]As recognized by the Supreme Court in *Md. Cas. Co.*,

> The difference between an abstract question and a "controversy"
> contemplated by the Declaratory Judgment Act is necessarily one of
> degree, and it would be difficult, if it would be possible, to fashion a
> precise test for determining in every case whether there is such a
> controversy.

312 U.S. at 273.  *See also BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir.
1993) ("There is no simple rule that addresses all shades of relationships between disputants.").

parties in early 2003 and in October 2003).[4]  In a January 28, 2003 letter, OSRAM offered

Citizen a "royalty-bearing license under our Particle Size patents," but its offer was couched in

less than reassuring terms.

> We believe that CITIZEN manufactures, markets and sells white LED
> products incorporating a phosphor conversion technology, which
> makes use of our Particle Size Patents . . . We further believe that your
> products, either separately or as part of other products, are offered for
> sale, sold and used in countries where our Particle Size Patents are in
> force.
>
> *        *        *        *
>
> If we have not heard anything from you by February 21, 2003, we will
> assume that your LEDs contain unlicensed particle size technology.  In
> that case, should OSRAM be forced to take further action against
> CITIZEN or its customers, the favorable licensing terms I am prepared
> to offer will no longer be available.

(Gasser Decl., Ex. 2.)

In response, plaintiff expressed an interest in discussing defendant's "patents and

technologies" (*id*. Ex. 3), and meetings obviously occurred thereafter.  (*See, e.g*., Sanders Decl.,

Ex. 4 and Gasser Decl., Exs. 4 and 5.)  While the substance of these meetings is unknown (*see*

*supra* note 4), no agreement was reached and in an October 29, 2003 letter, OSRAM's patent

attorney reiterated:

> Finally it has to be emphasized that it is still our position that
> specifically white LED components of CITIZEN make unauthorized
> use of and infringe OSRAM patent rights directed to luminescence
> conversion particle size and principle of conversion LED.  Your

---

[4] Plaintiff asserts that the discussions that occurred in 2003 were a "dispute over
infringement," whereas defendant characterizes these discussions as "licensing negotiations."
(*Compare* Pl.'s Opp'n at 14 *with* Def.'s Mot. at 5-6, 14, 25-28.)  However, neither side offers any
competent evidence about these conversations, and therefore, unsupported allegations and
argument concerning these discussions will be disregarded.

argument that the scope of U.S. 6,576,930 B2 is weak and not
persuasive.

(Gasser Decl., Ex. 4.)  In response, plaintiff wrote on October 31, 2003, declining to enter into

licensing negotiations with respect to the patents identified by defendant, since "we are simply

not convinced that CE is infringing any of OSRAM's patents," but indicating a willingness to

"continue our investigation of OSRAM's allegations" and expressing the "hope that the

outstanding matters between our companies can be resolved in an amicable and business friendly

manner."  (*Id*. Ex. 5.)

Despite the arguably threatening tone of these letters, OSRAM did nothing, and in fact,

there were no further communications between the parties.  The only subsequent action involving

these parties was plaintiff's filing of this suit over fourteen months later on January 18, 2005.

Plaintiff, however, points to several events in 2004 in an attempt to bolster its case.  First, in May

2004, OSRAM instituted a complaint in the ITC against Dominant and its distributors, alleging

that the LEDs manufactured and distributed by Dominant infringed nine of OSRAM's patents,

including some of those that were at issue in the prior year's discussions between the parties.  *See*

*supra* note 1.  (Sanders Decl., Ex. 5 and Gasser Decl., Exs. 6-7.)  As a result of this suit, one of

Dominant's distributors, American Opto Plus, decided that it would no longer import into the

United States or market LEDs manufactured by Dominant, which in turn caused OSRAM to

issue a press release on July 19, 2004, announcing American Opto Plus, Inc.'s decision and

stressing "that the company would not tolerate any infringement of its patent rights and would

take legal action against any unauthorized use." (Gasser Decl., Ex. 8.)  But again, despite this

statement to the industry, OSRAM took no further action to enforce its rights as a patent holder.

Plaintiff, nonetheless, tries to rely on several events that followed the issuance of this press release, but none of them provides any support for its position.  First, on November 2, 2004, the Patent Office issued U.S. Patent No. 6,812,500 to OSRAM.  As alleged by plaintiff, the '930 and '500 patents have the same disclosures and share the same patent application, but the '500 patent contains claims that are broader than the claims in the '930 patent, and thus, according to plaintiff, it will cover products not covered by the '930 patent.  (Pl.'s Opp'n at 9.) Whether this is accurate is irrelevant, since the issuance of a patent by a third party cannot be relevant to an analysis of the patentee's conduct, especially where there is no evidence that OSRAM took any action with respect to this patent.  *See Cygnus Therapeutics Sys. v. Alza Corp.*, 92 F.3d 1153, 1160-61 (Fed. Cir. 1996) (a patentee must do more than "exercise its lawful commercial prerogatives" even if the ownership of a patent "stands as a roadblock" to plaintiff's plans to produce and market a competing product).

Plaintiff also argues that during the course of the proceedings before the ITC, OSRAM made an opening statement that demonstrated an "expansive interpretation of its patent rights." (Pl.'s Opp'n at 9.)  However, whether OSRAM broadly interpreted its patent rights in a suit against a third party (as opposed to filing the suit) does not provide plaintiff with a reasonable apprehension of suit, since it is mere conjecture to argue that OSRAM would have acted on its interpretation by instituting suit against Citizen.[5]  Moreover, plaintiff misreads OSRAM's

_____

[5] Plaintiff baldly asserts that "OSRAM's ITC action, which sought to pick off a small competitor by broadly interpreting and asserting its patents, served only to buttress CE's reasonable apprehension that it would be sued.  OSRAM was seeking the benefit of a relatively quick and favorable adjudication in the ITC against a small competitor, which it could then use as leverage against CE, a more formidable opponent."  (Pl.'s Opp'n at 15.)  Not only is there a lack of evidentiary support for these claims, but given the fact that OSRAM chose to sue Dominant and its distributors, and not plaintiff, one could just as easily argue that plaintiff would

opening statement as covering all white LEDs, whereas the excerpt in fact focuses on a single

disputed claim term in the '930 patent,[6] and it is directed only at Dominant's product.  Finally,

according to plaintiff (Pl.'s Opp'n at 15), the arguments made before the ITC were virtually the

same as those that had been asserted by defendant in 2003, so it is difficult to understand why

this event heightened plaintiff's apprehension.[7]

In effect, the Court is confronted by a situation where the relevant events preceded

plaintiff's filing of suit by many months.  Admittedly, these earlier events could well have been

sufficient to create a reasonable apprehension of suit at the time that they occurred, since,

although a patentee may state its position relative to an alleged infringer's activities without

creating a reasonable apprehension of suit, *see Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888

_____

not be the target of a suit, since there is no competent evidence to suggest that any interests of
OSRAM were "served by delay in taking legal action."  *Phillips Plastics Corp. v. Kato Hatsujou
Kabushika Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) (quoting *BP Chemicals, Ltd.*, 4 F.3d at
977).

[6] Citizen relies primarily on the following two statements:  "The critical language here is
the plurality of paths have a substantially equal path length inside the luminescence conversion
element.  That's the disputed language in this case" and "The evidence of infringement is
undisputed, that everybody has homogenous white light."  (Gasser Decl., Ex. 11 at 85:17-20 and
89:12-13.)

[7] Plaintiff also cites to OSRAM's suit in Germany against Citizen, but this is not relevant
because it was filed after January 18, 2005.  Reasonable apprehension must exist at the time suit
was filed.  *See Arrowhead*, 846 F.2d at 736 (holding that jurisdiction depends on "the facts
existing when the complaint is filed"); *Holley Performance Prods., Inc. v. Barry Grant, Inc.*, No.
04-5758, 2004 WL 3119017, at *4 (N.D. Ill. Dec. 20, 2004) ("Grant's subsequent filing of an
infringement suit is irrelevant to the reasonable apprehension prong because reasonable
apprehension must be assessed as of the time Holley filed this complaint"); *CAE Screenplates,
Inc. v. Beloit Corp.*, 957 F. Supp. 784, 789-90 & nn. 16-17 (E.D. Va. 1997).  *But see BP
Chemicals Ltd.*, 4 F.3d at 980 ("Although it is the situation at the time suit was filed that
establishes the existence *vel non* of an actual controversy, subsequent events can reinforce the
correctness of the conclusion.") (citation omitted).

(Fed. Cir. 1992), apprehension may be found where the statements go beyond the mere "jawboning" that is common to licensing negotiations and instead "objectively appear to compel acceptance of offered terms." *Id.* at 889. *See also Clay Paky v. Vari-Lite, Inc.*, No. 99-11401, 2000 WL 977709, at *4 (S.D.N.Y. July 14, 2000) (Vari-Lite's letters went "much further than merely alerting Clay Paky and Coemar of Vari-Lite's patent" because they were, in effect, "a statement to the plaintiff to take notice that it is next on the list"); *United Aircraft Corp. v. Giannini Controls Corp.*, 156 U.S.P.Q. 557, 558 (S.D.N.Y. 1967) ("the threat of suit is also clear from the words 'we would appreciate hearing from you concerning this matter in the near future' followed by the statement that 'you would be advised that an infringement action has been filed against [another company] . . .'"). Similarly, litigation against a competitor and statements threatening infringement actions made to the industry at large have been cited as factors contributing to reasonable apprehension. *See, e.g.*, *Dr. Reddy's Labs., Ltd. v. aai Pharma Inc.*, No. 01-10102, 2002 WL 31059289, at *8 (S.D.N.Y. Sep. 13, 2002) and cases cited therein at *8-9 (two *Wall Street Journal* articles threatening infringement suits against an entire industry contributed to reasonable apprehension when the patentee had previously filed suits against the plaintiff); *Points of Light, Inc. v. Calypso Worldwide Marketing, Inc.*, No. 02-0118, 2002 WL 31413682, at *2-3 (S.D.N.Y. Oct. 25, 2002). *But see Shell Oil*, 970 F.2d at 889 (patentee's statement that it intended to enforce the patent did not create a reasonable apprehension of suit under the circumstances). But none of the cases relied on by plaintiff addresses the unique circumstance of a plaintiff inexplicably waiting to file suit for over six months after the last event

that could reasonably have caused an apprehension of suit.[8/]  It is this fact that distinguishes this case from all others and that is fatal to plaintiff's claim that an actual controversy existed at the time that suit was filed on January 18, 2005.

While there can be no question that the events of 2003 and 2004 may have caused "a nervous state of mind," *Phillips Plastics Corp.*, 57 F.3d at 1053-54, that is not enough to demonstrate a "reasonable apprehension of suit" in January 2005.  Rather, as the Federal Circuit made clear in *Teva,* a plaintiff must prove "a reasonable apprehension of *imminent* suit." 395 F.3d at 1333 (italics in original), and the significant time lag between plaintiff's alleged apprehension and the filing of suit belie any claim that at the time suit was filed in 2005, the objective circumstances supported such an apprehension.  *See, e.g.*, *Holley*, 2004 WL 3119017, at *4 ("if Holley feared an infringement suit was imminent based on the letter's two-week period, it is reasonable to expect Holley would have done *something* during the two-week period. Moreover, this fear should have dissipated when the two weeks passed and an infringement suit did not follow") (italics in original); *Indium Corp of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("prior patent litigation initiated by Semi-Alloys in 1975, against two other parties unconnected with Indium, was too remote to make Indium's apprehension of further litigation in 1982 reasonable"); *Cygnus*, 92 F.3d at 1159 ("the luncheon meeting occurred more than five years before Cygnus filed its complaint.  Any implicit threat that one may argue was

---

[8/] For instance, in *Points of Light, Inc.*, plaintiff sued within three days of receipt of the cease and desist letter and within a month of learning of defendant's notice to the industry threatening litigation (2002 WL 31413682, at *1); in *Dr. Reddy's*, plaintiff sued in November 2001, within days after the '712 patent was issued and three months after the second *Wall Street Journal* article (2002 WL 31059289, at *3); and in *Clay Paky*, plaintiff sued a little more than three months after receiving the first threatening letter and five weeks after receiving a second letter that again referred to plaintiff's "infringing products" (2002 WL 977709, at *2-3).

conveyed . . . could hardly be said to have had any significant continuing effect on

Cygnus . . . .").

In response, plaintiff argues that defendant's "insistence that the threat must be

'immediate' is misplaced," and that defendant has misinterpreted *Holley*. (Pl.'s Opp'n at 17-18.)

Plaintiff is wrong on both accounts.  While the facts in *Holley* are not the same as those in this

case, a plaintiff's failure to take prompt action in the face of what it claims to be a real threat of

an infringement suit is certainly a highly-relevant factor in assessing the reasonableness of

plaintiff's apprehension at the time that suit is filed.  Moreover, the fact that defendant did

nothing to enforce its rights against the plaintiff after the letters in 2003 and after its press release

in July 2004 should have, if anything, reduced plaintiff's fear of suit by January 2005.

Moreover, plaintiff is incorrect as a matter of law in its attempt to read out the

requirement of immediacy.  Although it is true that OSRAM need not be "poised on the

courthouse steps" (Pl.'s Opp'n at 17 (quoting *Vanguard*, 304 F.3d at 1255)), a district court

cannot render a declaratory judgment in the absence of an "actual controversy," which means that

the parties must have "adverse legal interests, of sufficient *immediacy* and reality to warrant the

issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273 (emphasis added).

In short, plaintiff cannot avoid the requirement of immediacy, and while it may have had

a reasonable apprehension of suit in the past, the Court concludes, based on the totality of the

circumstances, that plaintiff has not carried its burden of demonstrating, some thirteen months

after its last contact with OSRAM and six months after OSRAM's notice to the industry, that it

had a reasonable apprehension of suit on January 18, 2005.[9]

Accordingly, the Court will grant defendants Rule 12(b)(1) motion to dismiss on the grounds that it lacks subject matter jurisdiction over this claim.

_____
s/
ELLEN SEGAL HUVELLE
United States District Judge

Dated:  July 14, 2005

---

[9] Noticeably absent from this case are factors that figured prominently in the fact patterns cited by plaintiff.  *See, e.g.*, *Arrowhead*, 846 F.2d at 737-38 (in addition to threatening letters to plaintiff and its customers, defendant filed suit against a third party and sought a finding in that suit that plaintiff had infringed the patent); *Vanguard*, 304 F.3d at 1254-55 (defendant wrote threatening letters to the plaintiff and its customers, as well as filed suit against the plaintiff in an attempt to enjoin plaintiff from using the same technology by claiming misappropriation of trade secrets); *Dr. Reddy's Labs.*, 2002 WL 31059289, at *8 (public statements threatening to sue coupled with a significant legal history of suits between the parties with respect to the manufacture of generic drugs, including the very drug at issue in the instant litigation).